**UNITED STATES of America,**
**Appellee,**

v.

**Joel CACACE, Defendant–Appellants.**

**No. 04–6688–cr.**

United States Court of Appeals,
Second Circuit.

Aug. 6, 2008.

Isabel McGinty, Hightstown, NJ, for Defendant–Appellant.

Patricia E. Notopoulos, Assistant United States Attorney (Susan Corkery, Assistant United States Attorney, on the brief), for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Brooklyn, NY, for Appellee.

PRESENT: Hon. ROSEMARY S. POOLER, Hon. ROBERT D. SACK and Hon. SONIA SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

Defendant-appellant Joel Cacace, Sr. ("Cacace") appeals from a judgment convicting him, upon his guilty plea, of racketeering in violation of 18 U.S.C. § 1962 and sentencing him to a term of imprisonment of 240 months, five years of supervised release, restitution in the amount of $21,292, and a special assessment of $100. On appeal, Cacace challenges his sentence on all but the term of imprisonment. We assume the parties' familiarity with the facts and procedural history of the case.

### A. Special Assessment

As an initial matter, Cacace claims—and the government does not dispute—that the district court erred in ordering a special assessment of $100. Under the law governing Cacace's conviction, i.e., the law as it existed on November 1, 1988, the maximum special assessment was $50. *See* 18 U.S.C. § 3013(a)(2)(A) (1988). Although the law was amended to raise the special assessment to $100 in 1996, the Constitu-

tion's *ex post* facto clause prohibits retroactive application of this amendment. *See United States v. Labeille–Soto,* 163 F.3d 93, 102 (2d Cir.1998). The judgment must therefore be corrected to reduce the special assessment to $50.

### B. Restitution

■ Cacace also claims that the portion of his sentence providing for the payment of $21,292 in restitution to the family of one of the victims of his crime should be vacated because Cacace was not advised of the potential for restitution by the district court during the plea colloquy under Fed. R.Crim.P. 11 or in his plea agreement. Contrary to Cacace's assertion on appeal, our review of the record reveals that neither Cacace nor his trial counsel objected to the Probation Department's recommendation of this restitution and did not object to it at the time of sentencing. We thus review his restitution challenge for plain error, and find none here. *See United States v. Flaharty,* 295 F.3d 182, 195 (2d Cir.2002) (explaining that plain-error standard requires a defendant to demonstrate, *inter alia,* "that (1) there was error, (2) the error was 'plain,' [and] (3) the error prejudicially affected his 'substantial rights.'" (quoting *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993))).

At the threshold, there is no dispute that the district court was statutorily empowered to order the restitution at issue. In order to demonstrate that a Rule 11 error affected a defendant's "substantial rights" for purposes of plain-error review, he must show "a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez,* 542 U.S. 74, 83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004); *accord United States v. Vaval,* 404 F.3d 144, 151 (2d Cir.2005). Cacace has not met this bur-

den. To begin with, he was put on notice in the Probation Department's presentence report that the at-issue restitution would be sought, but did not indicate any desire to withdraw from his plea on this basis. *See Vaval*, 404 F.3d at 152 ("Where a defendant, before sentencing, learns of information erroneously omitted in violation of Rule 11 but fails to attempt to withdraw his plea based on that violation, there can be no reasonable probability that, but for the [Rule 11 violation], he would not have entered the plea, and the plain error standard is not met." (internal quotation marks omitted)). Moreover, because Cacace was on notice both in the plea agreement and from the plea colloquy that he faced a potential fine of up to $250,000, he is hard pressed to claim that the potential of $21,292 in restitution would have been a deal breaker had he known about it at the time of his plea. *See id.* (explaining that a defendant who is put on notice that he may be fined in an amount in excess of the challenged restitution generally will be unable to demonstrate that he would not have pled guilty had he known about the possibility of restitution).

Cacace's alternative challenge to the restitution order, i.e., that it was not contemplated in his plea agreement, is unavailing. Although Cacace's plea agreement did not indicate that restitution might be part of his sentence, he has not indicated any desire to withdraw from the plea, and he is not entitled to specific performance of the plea agreement. *See United States v. Renaud*, 999 F.2d 622, 625 (2d Cir.1993). Specific performance may be available where the prosecutor, as the contracting party, breaches a plea agreement. *See Mabry v. Johnson*, 467 U.S. 504, 509, 104

S.Ct. 2543, 81 L.Ed.2d 437 (1984). But here there is no such allegation, and there is no evidence in the record to support a claim of prosecutorial breach. *Cf. United States v. Amico*, 416 F.3d 163, 166–68 (2d Cir.2005) (holding that prosecutors did not breach plea agreement where Probation Department's presentence report made recommendation at odds with terms of the agreement and prosecutor did not advocate in favor of adopting the report's recommendation). Thus, the error—if any—of imposing restitution rests with the district court.[1] However, as we explained in *Renaud*, specific performance of a plea agreement is not an available remedy when—in the absence of prosecutorial breach—the district court imposes a sentence beyond the scope specified in a plea agreement. *Renaud*, 999 F.2d at 625. Cacace's reliance on *United States v. Gottesman*, 122 F.3d 150 (2d Cir.1997) to argue otherwise is entirely misplaced. Unlike in *Gottesman*, where the terms of the plea agreement were binding on the court because the governing statute made it so, *see* 18 U.S.C. § 3663(a)(3), the restitution statute at issue in the case before us does not make court-ordered restitution contingent on the parties' agreement, *see* 18 U.S.C. § 3663(a)(1).

## C. Supervised Release

■ Finally, Cacace claims that the portion of his sentence providing for five years of supervised release should be vacated because he had been advised by the district court during the Rule 11 plea colloquy and his plea agreement that the maximum statutory term of supervised release

---

1. It is not clear to us that there was any error because the plea agreement merely states—under a heading that Cacace's RICO offense "carries the following statutory penalties"—that restitution is "N/A." This stands in stark contrast to the affirmative language found elsewhere in the agreement, where the government and Cacace expressly "agree[d]" to certain terms, including that "his sentence can be no more than 20 years (240 months)," and that "no further criminal charges will be brought against the defendant."

was three years. These challenges fail for many of the reasons just discussed.

Notwithstanding the apparent confusion on the part of the parties, the court, and Probation at the time of Cacace's plea and pre-sentencing as to the statutory maximum term of supervised release, the maximum term under the extant statute governing Cacace's offense was in fact five years, not three years. *See* 18 U.S.C. § 3583(b)(1) (1988); Pub.L. 100–182, § 8(1).[2] Cacace's Rule 11 claim fails because he has not come forward with any evidence that he would not have accepted the plea had he known about the potential for five years (rather than three years) of supervised release. Indeed, he does not even *claim* on appeal that he would not have pled guilty had he known about the higher term. Because Cacace bears the burden on plain error review, his silence in this regard is fatal to his Rule 11 challenge. Moreover, Cacace is not entitled to specific performance of the plea agreements' reference to three years' supervised release. *See Renaud,* 999 F.2d at 625.

Although we find no plain error in the district court's imposition of restitution or a five-year term of supervised release, it is not clear to us from the record whether the district court intended or knowingly departed from the terms of the plea agreement and/or colloquy in imposing the sentence it did. The district court made no reference to the variances between the sentence and what was contemplated at the plea. Nor, in particular, did the district court explain how it reached the five-year (rather than three-year) term of supervised release, which, only with the benefit of hindsight, has the government been able to statutorily justify. Finally, the district court checked the box in the judgment of conviction, providing that "the court adopts the [PSR] and guideline applications without change," but the PSR recommended only two to three years of supervised release.

For the foregoing reasons, the judgment is AFFIRMED in part, VACATED in part, and REMANDED for the district court to amend the judgment with respect to the special assessment only. However, on remand, nothing herein shall prevent the district court from revisiting the orders of restitution and supervised release in the event that the court's departure from the terms of the plea was unintended.

---

**2.** As of November 1, 1988—which was the date Cacace's charged conduct ended—a violation of 18 U.S.C. § 1963 carried a criminal penalty of "not more than 20 years," 18 U.S.C. § 1963(a) (1988), which at that time was a Class B felony, 18 U.S.C. § 3559 (1988). In turn, the extant provision governing supervised release provided that Class B felonies carried a maximum of five years' supervised release. *See* 18 U.S.C. § 3583(b)(1), Pub.L. 100–182 § 8(1) (effective Dec. 7, 1987) (amending § 3583(b)(1) to contain a maximum five-year, rather than three-year, term of supervised release for Class B felonies).